IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TODD HATFIELD,

    Petitioner,

  v.

WARDEN, ROSS CORRECTIONAL
INSTITUTION,

    Respondent.

CASE NO. 2:08-CV-1152
JUDGE HOLSCHUH
MAGISTRATE JUDGE KING

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On November 15, 2002, the Clinton Township Fire Department was dispatched to a dumpster fire located off Lehner Road. Firefighter Brown was among those who went to the scene. In attempting to ensure the fire was extinguished, Brown discovered a body with extensive burn injuries. Brown also noticed a blunt injury to the head and neck of the victim. The body was later identified as that of Walter Howard.
>
> Detective Robinson of the Clinton Township Police Department began to investigate possible leads. Robinson learned that Howard spent time at 2240 North Fourth Street with Debra Marshall and defendant. The apartment was rented

in Marshall's name, but defendant also lived there most of the time during the relevant period.

Marshall and defendant had a relationship and moved in together in September 2002, despite defendant's marriage to Sheila Hatfield. They used crack cocaine on a regular basis. Marshall and defendant obtained their drugs from Howard and also directed friends and acquaintances to Howard to purchase drugs from him. Marshall and defendant allowed Howard to occasionally sleep on the couch in the apartment in exchange for drugs.

Detective Robinson spoke to Marshall and defendant about Howard. Marshall initially lied, in part because she was trying to protect defendant, but also because she feared that defendant might retaliate against her if she provided information. Eventually, Marshall told Robinson, in detail, the events that led to Howard's murder and the subsequent events.

According to Marshall's testimony at trial, on the evening of November 10, 2002 Marshall and defendant went to the home of their friend Bryan Michael. Upon leaving, defendant asked to borrow Michael's baseball bat. Michael agreed, not thinking anything of the request at the time. On Monday evening, November 11, 2002, Marshall and defendant picked up Howard at a friend's house. Eventually, all three returned to 2240 North Fourth Street.

At some point during the late evening of November 11 or early morning of November 12, 2004, defendant told Howard they did not have enough money for rent because defendant and Marshall smoked the crack they intended to sell. Howard, who did not smoke crack, told defendant he would not give them any more drugs or any rent money. Defendant became angry with Howard and told Marshall he was going to "whack him." (Tr. 301.) Marshall told defendant to leave Howard alone.

Marshall testified she was in the bedroom, and she suddenly heard "boom, boom, boom" and Howard yelling, "Debbie, help me, Debbie help me." (Tr. 302.) Marshall went to the

kitchen to see what was happening when defendant hit her in the face with the bat, told her not to tell anyone, threatened that, if she did, she and her family would be next, and ordered Marshall back to the bedroom. Marshall got into the closet and continued to hear thumping noises and screaming. Defendant eventually returned to the bedroom, opened the closet and said "It was harder than I fucking thought." (Tr. 305.)

According to Marshall, defendant proceeded to remove the crack cocaine and money from Howard's pocket. Defendant and Marshall then smoked the crack cocaine. Later that morning, Marshall complied with defendant's directive to go to Lowe's and purchase cleaning supplies. After she returned, the landlord came to the apartment to collect the rent. Marshall went outside and paid him with the cash defendant took from Howard. Defendant moved Howard's body to the spare bedroom and started to clean the apartment. Marshall left, went to a bar, and then went to the apartment of Walt, Sr. and Walt, Jr. where she told both of them she believed defendant just killed Howard.

Marshall testified she returned to the apartment around noon on Wednesday. Both defendant and Howard's body were gone. When defendant returned around two o'clock in the afternoon, he told Marshall to pack bags for a couple of days. Defendant, Marshall, and Bryan Michael went to the Day's Inn where Michael rented a room. Defendant and Michael then left. Upon their return, defendant stated he "thought he had fucked up" and "it was going to be on the news." (Tr. 332.) Soon thereafter, a news story was broadcast about a dumpster fire in Clinton Township at a location Marshall recognized as one of defendant's former employers.

According to Robinson's testimony at trial, defendant also rented a steam vacuum to clean the carpet. Robinson confirmed the November 13, 2002 rental in the name of Todd Hatfield. DNA results also established the presence of Howard's blood in the 2240 North Fourth Street apartment.

On February 14, 2003, the Franklin County Grand Jury indicted defendant on one count of aggravated murder, one count of

> tampering with evidence, and one count of gross abuse of a corpse. On November 26, 2003, a jury found defendant guilty of all counts. Defendant was sentenced to life in prison with parole eligibility after 20 years for the aggravated murder conviction, four years for tampering with evidence, and 11 months for gross abuse of a corpse. The trial court ordered the sentences to run consecutively.

*State v. Hatfield*, 2004 WL 2757842 (Ohio 10th App. Dist. December 2, 2004). Petitioner filed a timely appeal, in which he asserted the following assignments of error:

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING APPELLANT GUILTY OF AGGRAVATED MURDER, TAMPERING WITH EVIDENCE AND GROSS ABUSE OF A CORPSE AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY IMPROPERLY SENTENCING HIM TO CONSECUTIVE TERMS OF ACTUAL INCARCERATION IN CONTRAVENTION OF OHIO'S SENTENCING STATUTES.
>
> III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY IMPROPERLY SENTENCING HIM TO A TERM OF ACTUAL INCARCERATION WHICH WAS LONGER THAN THE MINIMUM TERM IN CONTRAVENTION OF OHIO'S SENTENCING LAWS.

*See id.* On December 2, 2004, the state court of appeals affirmed petitioner's convictions, but remanded the case for a new sentencing hearing "because the trial court imposed consecutive sentences without making certain findings and stating certain reasons for its findings, pursuant to provisions of R.C. 2929.14." *State v.Hatfield*, 2007 WL 2110905 (Ohio

4

App. 10th Dist. July 24, 2007). Petitioner did not file a timely appeal of the appellate court's decision to the Ohio Supreme Court. On September 16, 2005, petitioner filed a motion for delayed appeal to the Supreme Court. *See Exhibits 12 and 13 to Return of Writ*. On October 26, 2005, the Ohio Supreme Court denied petitioner's motion for delayed appeal. *State v. Hatfield*, 106 Ohio St.3d 1554 (2005). Thereafter the trial court re-sentenced petitioner pursuant to the appellate court's remand.

> On remand, the trial court imposed the identical sentences it had initially imposed, and made all of the findings enumerated in then-applicable R.C. 2929.14(E)(4) and 2929.14(B). Appellant again appealed, this time on the grounds that the trial court's sentence violated his right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution. On the authority of *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, [the state appellate] court again reversed and remanded the case for a new sentencing hearing.
>
> On October 23, 2006, the trial court held a new sentencing hearing and imposed the same sentence that it had imposed twice before. Appellant timely appealed and advances the following single assignment of error for our review:
>
> THE TRIAL COURT COMMITTED PLAIN ERROR BY VIOLATING THE EX POST FACTO AND DUE PROCESS CLAUSES OF THE UNITED STATES CONSTITUTION IN RESENTENCING APPELLANT.

*State v. Hatfield,* 2007 WL 2110905 (Ohio App. 10th Dist. July 24, 2007). On July 24, 2007, the appellate court affirmed the trial court's judgment. *Id.* On December 12, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Hatfield*, 116 Ohio St.3d 1442 (2007).

Petitioner also pursued post conviction relief.

5

> On May 17, 2007, appellant filed in the trial court a petition for post-conviction relief pursuant to R.C. 2953.21. His petition asserted a number of claims that arose out of his original trial. On August 10, 2007, appellant filed a motion for summary judgment on those claims. On August 24, 2007, the trial court denied appellant's petition as untimely and also denied his motion for summary judgment.

*State v. Hatfield*, 2008 WL 787627 (Ohio App. 10th Dist. March 25, 2008). On March 25, 2008, the appellate court affirmed the trial court's dismissal of petitioner's post conviction petition as untimely. *Id.*

On December 4, 2008, petitioner filed the petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following:

> The remedy that the Ohio Supreme Court set forth in *State v. Foster*, 109 Ohio St.3d 1.... (2006) violates the Ex Post Facto and Due Process Clauses of the United States Constitution.

However, petitioner has withdrawn his claim that the trial court's sentence violated the Ex Post Facto Clause; rather, petitioner is proceeding only on his claim that his sentence violates the Due Process Clause. *See Traverse*. It is the position of the respondent that this claim is without merit.

## MERITS

Petitioner asserts that the trial court's imposition of consecutive maximum terms after the Ohio Supreme Court's decision in *Foster* violates due process because *Foster* retroactively and unforseeably enlarged the sentence(s) that petitioner faced. He argues that he was entitled to minimum concurrent terms of incarceration, and requests that he

6

be re-sentenced accordingly. *See Traverse*.

The state appellate court rejected petitioner's claim as follows:

> On February 14, 2003, the Franklin County Grand Jury indicted appellant on one count of aggravated murder, one count of tampering with evidence, and one count of gross abuse of a corpse. On November 26, 2003, a jury found him guilty of all counts. The trial court sentenced appellant to life in prison with parole eligibility after 20 years for the aggravated murder conviction, four years for tampering with evidence, and 11 months for gross abuse of a corpse. The trial court ordered the sentences to run consecutively.
>
> On appeal, this court affirmed appellant's convictions but remanded the case for a new sentencing hearing because the trial court imposed consecutive sentences without making certain findings and stating certain reasons for its findings, pursuant to provisions of R.C. 2929.14 that were applicable to appellant's first sentencing hearing. *State v. Hatfield,* Franklin App. No. 04AP-402, 2004-Ohio-6450. On remand, the trial court imposed the identical sentences it had initially imposed, and made all of the findings enumerated in then-applicable R.C. 2929.14(E)(4) and 2929.14(B). Appellant again appealed, this time on the grounds that the trial court's sentence violated his right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution. On the authority of *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, this court again reversed and remanded the case for a new sentencing hearing.
>
> On October 23, 2006, the trial court held a new sentencing hearing and imposed the same sentence that it had imposed twice before.
>
> \*\*\*
>
> Appellant challenges his sentence on the ground that retroactive application of the severance remedy ordered by the Ohio Supreme Court in *Foster* is violative of his due process rights and the ex post facto provision of the United States Constitution. Appellant acknowledges that he raised no

objection during sentencing, but he argues plain error.

This court has addressed and rejected the identical argument raised by appellant. *See, e.g.*, *State v. Hudson,* Franklin App. No. 06AP-335, 2007-Ohio-3227; *State v. Jones,* Franklin App. No. 06AP-734, 2007-Ohio-1466; *State v. Henderson,* Franklin App. No. 06AP-645, 2007-Ohio-382, discretionary appeal not allowed, 114 Ohio St.3d 1413, 2007-Ohio-2632, 867 N.E.2d 846; *State v. Alexander,* Franklin App. No. 06AP-501, 2006-Ohio-6375, discretionary appeal not allowed, 113 Ohio St.3d 1444, 2007-Ohio-1266, 863 N.E.2d 659; *State v. Gibson,* Franklin App. No. 06AP-509, 2006-Ohio-6899, discretionary appeal not allowed, 113 Ohio St.3d 1514, 2007-Ohio-2208, 866 N.E.2d 512.

Appellant argues that the *Foster* court's severance of R.C. 2929.14(B), which relates to non-minimum sentences, and R.C. 2929.14(E)(4), which relates to consecutive sentences, unlawfully deprived him of due process. Specifically, he argues that, as applied to him, the *Foster* decision operates as an ex post facto law because it inflicts a greater punishment upon him than would have the sentencing statutes in place at the time he committed his crimes. He argues that application of *Foster* to his case unlawfully divests him of the presumption of minimum and concurrent terms he claims he would have been afforded before *Foster.*

Appellant maintains that the *Foster* court should only have excised the judicial fact finding portions of R.C. 2929.14(B) and 2929.14(E)(4) but should have left intact the portions of the statute that expressed presumptions in favor of minimum and concurrent sentences. He argues that we should reverse and remand for a third sentencing hearing.

We are bound to apply *Foster* as it was written. *Sant v. Hines Interests Ltd. Partnership,* 10th Dist. No. 05AP-586, 2005-Ohio-6640, ¶ 19 ("[W]e [are] bound to follow precedent set by the Ohio Supreme Court [.]"). Likewise, the trial court was bound to apply *Foster* as written, and was not permitted to give appellant " * * * the benefit of a state of law that never existed; [that is,] * * * a sentence that comports with the Sixth Amendment requirements of *Booker* [ ] and *Foster* [ ] * * * but

> [without] the possibility of a higher sentence under the remedial holdings of *Booker* [ ] and *Foster* [ ]." *State v. Paynter,* Muskingum App. No. CT2006-0034, 2006-Ohio-5542, ¶ 28, quoting *U.S. v. Jamison (C.A.7, 2005),* 416 F.3d 538, 539; see, also, *State v. McGhee,* Shelby App. No. 17-06-05, 2006-Ohio-5162, discretionary appeal not allowed, 112 Ohio St.3d 1491, 2007-Ohio-724, 862 N.E.2d 118, reconsideration denied, 113 Ohio St.3d 1470, 2007-Ohio-1722, 864 N.E.2d 655.
>
> As the *Foster* court noted, once the mandatory judicial factfinding is properly eliminated from R.C. 2929.14, "there is nothing to suggest a 'presumptive term.' " *Foster,* at ¶ 96. Therefore, the court held, the sections that " * * * either create presumptive minimum or concurrent terms or require judicial factfinding to overcome the presumption, have no meaning now that judicial findings are unconstitutional[.]" *Id.* at ¶ 97. Thus, at the time that appellant committed his crimes the law did not afford him an irrebuttable presumption of minimum and concurrent sentences. As such, *Foster* does not violate appellant's right to due process and does not operate as an ex post facto law.
>
> But appellant now seeks the benefit of an irrebuttable presumption of minimum and concurrent sentences, even though such a presumption never existed, arguing that we should order the trial court to apply part of *Foster* to him but not all of it. For all of the reasons stated hereinbefore, this we cannot do. Therefore, we find no error and overrule appellant's assignment of error. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.

*State v. Hatfield, supra,* 2007 WL 2110905. The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this standard as follows:

> [A] decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id*. at 413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* Further, the federal habeas court should not transform the inquiry into a subjective

10

one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.*

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), citing *Williams v. Taylor*, 529 U.S. 362 (2000). Petitioner has failed to meet this standard here.

In *Hooks v. Sheets*, – F.3d –, 2010 WL 1655578 (6th Cir. April 27, 2010), the United States Court of Appeals for the Sixth Circuit rejected the argument made by petitioner in this case, at least as that argument applies to the imposition of consecutive terms of incarceration:

> The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, which was innocent when done, (2) " 'aggravates a crime, or makes it greater than it was, when committed,' " (3) " 'changes the punishment' " to inflict greater punishment than the law provided when the crime was committed, or (4) " 'alters the legal rules of evidence' " so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee,* 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). The Ex Post Facto Clause, however, provides by its terms that it is applicable only to acts of the Legislature, and " 'does not of its own force apply to the Judicial Branch of government.' " *Id.* (quoting *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). Nevertheless, the "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." *Id.* Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. *See id.* at 457. Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the Ex Post Facto Clause. *Id.* at 458-59.

> A state's statutory scheme does not violate the Sixth

Amendment simply because it constrains the ability of courts to impose consecutive sentences to situations in which the court has found specific facts. *Oregon v. Ice,* --- U.S. ----, ---- - ----, 129 S.Ct. 711, 714-15, 172 L.Ed.2d 517 (2009). Instead, a state may allow courts unfettered discretion to impose consecutive sentences or it may limit that authority without violating the Sixth Amendment. *Id.* At the time Hooks committed his crimes, Ohio permitted the court to impose consecutive rather than concurrent sentences if it found particular facts, *see* ORC § 2929.14(E)(4), and explained its "reasons for imposing the consecutive sentences," ORC § 2929.19(B)(2)(c). The Ohio Supreme Court nevertheless determined that these statutory provisions violated *Blakely* because they allowed the imposition of longer sentences-consecutive sentences-based upon judicial factfinding. *Foster,* 845 N.E.2d at 491.

Regardless of the court's determination in *Foster,* the maximum sentence to which Hooks was constitutionally subject contemplated consecutive sentences. Hooks would have the court calculate his maximum sentence as being imposed concurrently based solely on the facts found by a jury at the time of sentencing, because he argues that this calculation is mandated by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, *Apprendi* does not limit the calculation of Hooks's potential sentence to concurrent sentences when the judicial fact-finding here is allowed under *Ice* . Thus, Hooks was initially and constitutionally subject to consecutive sentences according to the "guided discretion" of the court. *See Foster,* 845 N.E.2d at 495. Moreover, Hooks was always aware of the potential for consecutive sentences. On re-sentencing post- *Foster* he remained subject to consecutive sentences within the discretion of the court. Since Hooks was *always* subject to consecutive rather than concurrent sentences in the discretion of the trial court, his re-sentencing under *Foster* did not raise ex post facto or due process concerns. We need not reach the broader question of whether re-sentencing under *Foster* ever violates the Due Process or Ex Post Facto Clauses because *Foster's* application in Hooks's case does not do so.

*Id.* Further, petitioner's argument has been repeatedly rejected by state and federal courts.

As noted by this Court in *Dickens v. Brunsman*, 2009 WL 3199066 (S.D. Ohio September 29, 2009),

> Petitioner's claim that the retroactive application of the *Foster* remedy to correct constitutional infirmities in Ohio's sentencing statutes constitutes a violation of the Constitution's Ex Post Facto and Due Process Clauses has been thoroughly discussed and uniformly rejected by this Court and other federal district and state courts in Ohio. *See, e.g., Hooks v. Sheets*, No. 1:07cv520, 2008 WL 4533693, at *3-5, *13-19 (S.D. Ohio Oct. 3, 2008) (Beckwith, J.; Hogan, M.J.) (unpublished) (and cases cited therein); *see also Wright v. Warden, Pickaway Corr. Inst.*, --- F.Supp.2d ----, No. 1:07cv1022, 2009 WL 1850170, at *1, *23-25 (S.D. Ohio June 25, 2009) (Barrett, J.; Hogan, M.J.) (to be published) (and cases cited and quoted therein); *Kelley v. Brunsman*, --- F.Supp.2d ----, No. 1:08cv71, 2009 WL 1617774, at *5-6, *17-18 (S.D. Ohio June 9, 2009) (Spiegel, J.; Hogan, M.J.) (to be published); *Smith v. Brunsman*, --- F.Supp.2d ----, No. 1:07cv878, 2009 WL 530113, at *1, *4-8 (S.D. Ohio Feb. 27, 2009) (Barrett, J.; Black, M.J.) (to be published) (noting that "both the federal district courts and Ohio courts have rejected ex post facto challenges to the Foster decision").

*Id*. This Court agrees with this reasoning. Petitioner's claim simply lacks merit. Petitioner faced the same penalty ranges in sentences for his convictions both prior to and after *Foster*. Indeed, the trial court in this case imposed the same sentence on three occasions. In short, the trial court's imposition of non-minimum consecutive terms after *Foster* did not violate the Due Process Clause.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections

to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


May 3, 2010                                             *s/Norah McCann King*
                                                        Norah McCann King
                                                        United States Magistrate Judge